# In the United States Court of Federal Claims

|  |  |
|---|---|
| REBECCA METZINGER, M.D.,<br><br>*Plaintiff,*<br><br>v.<br><br>THE UNITED STATES,<br><br>*Defendant.* | No. 23-332 C<br><br>(Filed October 25, 2024) |

Marie O. Riccio, Law Offices of Marie Riccio, New Orleans, LA, for plaintiff

Patrick S. Angulo, Civil Division, United States Department of Justice, Washington, DC, for defendant

**OPINION AND ORDER**
**Granting in Part and Denying in Part the Government's**
**Motion to Dismiss the Transfer Complaint**
**and Transferring in Part**

**SILFEN,** *Judge.*

Rebecca Metzinger seeks back pay and other damages under the Equal Pay Act for sex-based wage discrimination and for retaliation by her employer. Dr. Metzinger, an ophthalmologist, alleges that her employer, the Department of Veterans Affairs, willfully paid her less than her male supervisees for approximately ten years. When she first discovered the pay discrepancy in 2017, she filed a complaint with the Equal Employment Opportunity Commission. Two years later, she filed a civil suit in Louisiana district court. She alleges that her employer retaliated against her in response to those complaints. Part of the Louisiana case was eventually transferred to this court.

The government moves to dismiss Dr. Metzinger's complaint in this court. The government argues that under the Equal Pay Act's statute of limitations, this court lacks jurisdiction over her wage-discrimination claims arising from paychecks issued more than two years before she filed

1

her district court case. And any surviving claims, the government argues, must also be dismissed for failing to state a claim because Dr. Metzinger has not alleged a prima facie case of discrimination. The government also argues that Dr. Metzinger's retaliation claim alleges a tort and is therefore outside this court's jurisdiction.

Dr. Metzinger's complaint establishes a prima facie case of discrimination for each paycheck that was issued within the limitations period. Her Equal Pay Act claims arising from paychecks issued outside the limitations period are time barred and must be dismissed. Damages for those earlier paychecks are likewise barred in this court. The court also has to determine the applicable limitations period; the Equal Pay Act allows an injured party to sue within two years of when her claim accrues, but that time is extended to three years if the employer's violation is willful. Here, Dr. Metzinger has plausibly alleged that the government willfully violated the Equal Pay Act, so she may proceed to litigate claims that accrued during an additional third year. Dr. Metzinger's accompanying retaliation claim alleges a tort and is beyond this court's jurisdiction. While the retaliation claim does not belong in this court, it does belong back in Louisiana district court, where Dr. Metzinger first filed her suit and could have litigated the retaliation claim.

This court therefore **grants in part and denies in part** the government's motion to dismiss. The court **dismisses** Dr. Metzinger's wage-discrimination claims covering paychecks issued before May 21, 2016, and **transfers** Dr. Metzinger's retaliation claim to the Louisiana district court. The court also **denies** Dr. Metzinger's more recent motion to direct the government to negotiate in good faith, or in the alternative, to relieve the parties of their obligation to participate in settlement negotiations, discussed below.

## I.    Background

### A.    Dr. Metzinger's pay history and complaint at the Equal Employment Opportunity Commission

Dr. Metzinger is a board-certified ophthalmologist. ECF No. 99 at 4 [¶6].[1] Since 2008, she has been the Chief of Ophthalmology at the New Orleans Veterans Medical Center, run by the Department of Veterans Affairs (VA). *Id.* at 4-5 [¶¶6-7]. When Dr. Metzinger was first hired in 2008, her salary was $240,000 per year. *Id.* at 5 [¶7]. In August 2017, it was approximately $261,000 per year. *Id.* at 18 [¶31] (alleging a salary of $261,745 and $261,045 in different places). Dr. Metzinger alleges that she has suffered sex-based wage discrimination since 2008 because she was consistently paid less than her supervisees, all of whom were male. *Id.* at 12 [¶18], 16 [¶27].

From 2008 to 2016, "Dr. Metzinger consistently received annual performance evaluations that classified her performance as 'exceptional.'" ECF No. 99 at 8 [¶12]. When the VA opened a new eye clinic in 2017, Dr. Metzinger had principal responsibility for opening and supervising it. *Id.* at 5 [¶8]. She also maintained her responsibilities as section chief and continued to see patients. *Id.* at 5-7 [¶9].

On May 22, 2017, a surgery section administrator gave Dr. Metzinger a written performance evaluation for the 2016 fiscal year. ECF No. 99 at 8 [¶12]. The performance evaluation rated Dr. Metzinger "fully successful" in all aspects of her performance except leadership; on leadership she was rated "unacceptable." *Id.* at 9 [¶12].

Dr. Metzinger discussed the evaluation with the VA's human resources supervisor. ECF No. 99 at 9-10 [¶13]. In that meeting, she shared that she had recently learned that male supervisees had salaries higher than hers and disclosed that she had experienced acts of hostility and

---

[1] The court accepts as true the facts alleged in Dr. Metzinger's complaint for purposes of this decision. *See Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011).

harassment from her supervisor. *Id.* at 9-10 [¶13]. The human resources supervisor told Dr. Metzinger that, before this evaluation, he had not received any reports that Dr. Metzinger's performance was unacceptable, but the newly hired chief of surgery, James Smith, had said that he would like to remove Dr. Metzinger and give her position "to someone else." *Id.* at 10 [¶¶13-14].

Acting on human resources' advice, Dr. Metzinger filed a complaint with the Equal Employment Opportunity Commission (EEOC) on June 20, 2017. ECF No. 99 at 10 [¶13], 11 [¶16]; ECF No. 117-1 at 11 (Dr. Metzinger's Form 4939 was filed later, on October 5, 2017). Her EEOC complaint alleged sex-based wage discrimination, retaliation in violation of the Equal Pay Act, and violations of Title VII. ECF No. 99 at 11 [¶16]. The EEOC investigated her complaint and issued a notice accepting her Equal Pay Act and Title VII claims. *Id.* at 11-12 [¶¶16-17]. The EEOC assigned her case to an administrative law judge, discovery began, and a trial date was set. *Id.* at 11-12 [¶17].

Through discovery, Dr. Metzinger learned that in the time she had been employed at the VA, the VA should have but did not hold five "market pay panels"—one every two years—on her behalf. ECF No. 99 at 17 [¶30]. Market pay panels allow the VA to give employees additional pay based on market conditions. *Id.* at 17 [¶28]. Within that same period, she alleges, the VA held panels and gave market pay increases to male physicians. *Id.* at 17 [¶29]; ECF No. 117 at 17. As a result, those male physicians, subordinate to her, "were being paid more than she was although she was the Chief of the Section." ECF No. 99 at 17 [¶29].

Dr. Metzinger names four male physicians as comparators: James Diamond, Arley Jaramillo, Jared Vincent, and Victor Carriere. ECF No. 99 at 20-24 [¶¶35-44]; *see* ECF No. 117-2 at 2. Dr. Metzinger alleges that, in discovery at the EEOC, the VA provided manipulated salary information for those comparators that made it look like their salaries were "far lower than the actual

wages they were receiving." ECF No. 99 at 20 [¶34]; ECF No. 117 at 17-22 (stating that the VA's salary spreadsheet did not match employees' SF-50 forms and pay panel documents, and that the spreadsheet underreported employees' actual take-home pay). In 2017, Dr. Diamond, a staff physician (classified as Tier I), made roughly $28,000 more than Dr. Metzinger, a section chief (classified as Tier II), even though he performed fewer surgeries, saw fewer patients, and had not been assigned additional responsibilities. ECF No. 99 at 20-23 [¶¶35-40]. Dr. Jaramillo, a Tier I physician who had only been a staff physician for four years, made roughly $20,000 more than Dr. Metzinger did. *Id.* at 23-24 [¶43]. Dr. Metzinger also alleges that two of her subordinates, Dr. Vincent and Dr. Carriere, both Tier I physicians who had fewer credentials and fewer responsibilities than Dr. Metzinger, had salaries nearly the same as hers. *Id.* at 23 [¶¶41-42]. According to Dr. Metzinger, Dr. Vincent was fired in 2017 for misfeasance. *Id.* at 23 [¶41].

Around September 2017, after filing the EEOC complaint, Dr. Metzinger received her first market pay panel. ECF No. 99 at 18 [¶31]; ECF No. 117-4 (pay panel decision dated August 2017). The panel awarded her a nearly $40,000 pay increase, setting her salary at $300,000. ECF No. 99 at 18 [¶31]. According to Dr. Metzinger, the pay panel set her salary increase "to be effective June 16, 2016," the date her most recent market pay panel should have convened. *Id.* (emphasis omitted).[2] But Dr. Metzinger "did not begin to fully receive the Market Pay increase until after January[] 2018." *Id.* at 19 [¶32] (emphasis omitted). Dr. Metzinger alleges that, after an audit, the assistant deputy of human resources believed that the wrong effective date (June 26, 2017) was input into the system. *Id.* at 18-19 [¶32]. According to Dr. Metzinger, the government took the

---

[2] Dr. Metzinger has not provided any documentation that shows the effective date. Nothing in the market pay panel decision gives that date. ECF No. 117-4.

position that her adjusted salary should be "effective only as of June 26, 2017," a year after the pay panel's effective date. *Id.* at 19 [¶32] (emphasis omitted).

In October 2017, someone filed an anonymous complaint against Dr. Metzinger. ECF No. 99 at 27-28 [¶49]. The VA's Office of Inspector General conducted a formal investigation. *Id.* at 28 [¶49]. Dr. Metzinger alleges that Dr. Diamond filed the complaint and was working with Dr. Smith, who wanted to replace her. *Id.* at 10 [¶14], 28 [¶49]. Before that complaint, human resources never received any other "complaints or any disciplinary warnings against [Dr. Metzinger], not even verbal counseling." *Id.* at 28 [¶49]. According to Dr. Metzinger, the investigators concluded that the complaint was baseless and cleared her of all charges. *Id.*

After Dr. Metzinger's EEOC complaint, she alleges that the VA wrongfully prevented her from sitting on compensation and pay panels to review her supervisees, as she had before and as federal regulation requires. ECF No. 99 at 29-30 [¶52]. She also alleges that her supervisor retaliated against her by prompting the American Legion to cancel its 2017 award ceremony where she was scheduled to receive an award for her work on behalf of veterans. *Id.* at 27 [¶48(c)].

After Dr. Metzinger's Equal Pay Act claim was transferred to this court in 2023, discussed more below, someone filed a second anonymous complaint against Dr. Metzinger, prompting another investigation. ECF No. 99 at 29 [¶50]. The VA's Office of Inspector General again investigated the complaint and dismissed it as groundless. ECF No. 108 at 15; ECF No. 119 at 49:1-18. Dr. Metzinger alleges that both investigations, in addition to other post-EEOC-complaint actions, were acts of retaliation in response to her complaints of discrimination. ECF No. 99 at 26-29 [¶¶49-50].

### B.    Dr. Metzinger's history in court

On May 21, 2019, while Dr. Metzinger's EEOC case was pending, she filed a complaint in the United States District Court for the Eastern District of Louisiana alleging sex-based wage

discrimination under the Equal Pay Act. ECF No. 1 (*Metzinger v. Department of Veterans Affairs*, No. 19-cv-10614, ECF No. 1 (E.D. La. May 21, 2019)). Dr. Metzinger alleged discrimination starting in 2008 and alleged that, despite being awarded a pay adjustment with some back pay in January 2018, she still had not received that back pay for July 2016 through July 2017. ECF No. 1 at 6-8 [¶¶13-16]; ECF No. 119 at 71:4-20.

Dr. Metzinger thought her Equal Pay Act claims at the EEOC would be dismissed based on her filing suit in court under the Equal Pay Act but thought the EEOC still had jurisdiction over her Title VII claims. *See* ECF No. 117 at 7-12. The EEOC administrative law judge, however, dismissed the entire administrative proceeding, including her Title VII claims. *Metzinger v. Robert Wilkie, Secretary, Department of Veterans Affairs*, No. 461-2018-00121X (EEOC Oct. 25, 2019); ECF No. 117-1 at 31-36 (copy of decision). The administrative law judge reasoned that a federal employee must choose between an administrative hearing and a federal civil action. *See* ECF No. 117-1 at 33-34. The administrative law judge stated that, under EEOC regulations, if "at least 180 days have passed since the filing of [an EEOC] complaint" "that is the basis of a pending civil action in a United States District Court," the EEOC complaint "shall be dismissed." *Id.* (citing 29 C.F.R. §§ 1614.407(b), 1614.107(a), 1614.409). The administrative law judge found that Dr. Metzinger was alleging the same factual bases of discrimination in both the EEOC and district court, that her claims were "inextricably linked," and that "all the claims should be heard in one forum." *Id.* at 33-34. Dr. Metzinger appealed the dismissal to the Office of Employment Discrimination Complaint Adjudication, which affirmed, stating that the dismissal was "factually and legally correct." *Id.* at 68-70.

Shortly after the EEOC terminated Dr. Metzinger's case, she filed a separate action in the district court alleging a Title VII violation (*Metzinger v. Department of Veterans Affairs*, No. 20-

cv-599, ECF No. 1 (E.D. La. Feb. 18, 2020)), and the case was consolidated with her original Equal Pay Act district court suit. ECF No. 25.

The government moved to dismiss Dr. Metzinger's Equal Pay Act claim for lack of jurisdiction, arguing that because Dr. Metzinger sought more than $10,000 in damages against the government, under the Tucker Act, the Court of Federal Claims had exclusive jurisdiction over that claim. ECF No. 28. The district court agreed and ordered a transfer to this court. ECF No. 49. Dr. Metzinger appealed the transfer order to both the Fifth Circuit and the Federal Circuit. ECF No. 51 (notice of appeal directed to both circuits); ECF No. 54 (amended notice of appeal); ECF No. 56 (notice of appeal from interlocutory order). The Fifth Circuit dismissed the appeal for lack of appellate jurisdiction. ECF No. 75.

While the Federal Circuit appeal was pending, the government changed its position, and the parties informed the Federal Circuit that they agreed that "the [district court] possesse[d] jurisdiction to hear her case, and that it erred when it concluded that it did not." *Metzinger v. Department of Veterans Affairs*, Case No. 20-1906, ECF No. 20-1 at 2 (Fed. Cir. Aug. 26, 2020). Despite the parties' agreement, the Federal Circuit affirmed the district court's transfer order. The court of appeals explained that the Tucker Act requires that, "[w]here the Federal Government is sued for damages or back pay under [29 U.S.C.] § 216(b)" for $10,000 or more, "the court of competent jurisdiction can only be … the Court of Federal Claims." ECF No. 89-1 at 11 (*Metzinger v. Department of Veterans Affairs*, 20 F.4th 778, 785 (Fed. Cir. 2021)) (cleaned up).

The district court then separated Dr. Metzinger's claims and transferred only the Equal Pay Act claim to this court. ECF No. 92; ECF No. 117-5 at 11. The district court stayed and administratively closed the Title VII claim until this case is resolved. ECF No. 119 at 61:23-62:12; *see Metzinger v. Department of Veterans Affairs*, No. 19-cv-10614, Docket (E.D. La.) (noting the case

status as "closed, ... stayed, transfer); *Metzinger v. Department of Veterans Affairs*, No. 20-cv-599, ECF No. 10 (E.D. La. Nov. 10, 2020).

After the transfer, Dr. Metzinger filed a new complaint in this court. ECF No. 99. The new complaint—called a transfer complaint—reiterates her sex-based wage discrimination claim under the Equal Pay Act, alleges that the VA's conduct was "willful" as defined under the Equal Pay Act, and seeks back pay back to June 2016 and other damages. *Compare* ECF No. 1 *with* ECF No. 99; *see also* ECF No. 99 at 18-19 [¶¶31-33], 30 [¶53], 32-33 [¶56]. The transfer complaint also adds retaliation under the Fair Labor Standards Act, 29 U.S.C. § 215. ECF No. 99 at 25-30 [¶¶46-52].

The government moved to dismiss Dr. Metzinger's transfer complaint (ECF No. 106), and the court ordered supplemental briefing on three specific issues (ECF No. 113). After the parties filed those briefs, the court held an oral argument on the motion to dismiss. The court then ordered the parties to engage in settlement discussions every thirty days. ECF No. 116. About two months later, Dr. Metzinger filed a motion requesting that the court direct the government to negotiate in good faith or relieve the parties from their obligation to participate in settlement discussions. ECF No. 121.

## II.    Discussion

Dr. Metzinger seeks back pay and liquidated damages under the Equal Pay Act (29 U.S.C. §§ 206(d), 216(b)),[3] alleging sex-based wage discrimination and retaliation for filing complaints with human resources, the EEOC, and the federal district court. ECF No. 99. The government moves to dismiss for lack of subject-matter jurisdiction and failure to state a claim upon which

---

[3] The Equal Pay Act is an amendment to the Federal Labor Standards Act, 29 U.S.C. § 201 *et seq*. *Corning Glass Works v. Brennan*, 417 U.S. 188, 190 (1974).

relief may be granted. ECF No. 106; *see* Rules of the Court of Federal Claims (RCFC) 12(b)(1), 12(b)(6).

On a motion to dismiss for lack of jurisdiction under rule 12(b)(1), the "court must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." *Trusted Integration, Inc.*, 659 F.3d at 1163. If the court determines that it lacks subject-matter jurisdiction, it must dismiss the action. RCFC 12(b)(1), (h)(3); *see Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998). A "plaintiff bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence." *Estes Express Lines v. United States*, 739 F.3d 689, 692 (Fed. Cir. 2014).

This court's jurisdiction is primarily defined by the Tucker Act, which provides the court with exclusive jurisdiction to decide specific types of monetary claims against the United States. *Kanemoto v. Reno*, 41 F.3d 641, 644 (Fed. Cir. 1994); 28 U.S.C. § 1491(a)(1). The Tucker Act provides the court with "jurisdiction to render judgment upon any claim against the United States founded … upon the Constitution, or any Act of Congress or any regulation of an executive department, … or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Equal Pay Act is a money-mandating statute over which this court has jurisdiction. *Cooke v. United States*, 85 Fed. Cl. 325, 341 (2008); *see Jentoft v. United States*, 450 F.3d 1342, 1348-49 (Fed. Cir. 2006).

In Equal Pay Act cases, this court's jurisdiction is limited to suits "commenced within two years after the cause of action accrued … except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). An Equal Pay Act suit "shall be forever barred unless commenced" within the relevant two- or three-year window. *Id.*

Willful conduct is "not merely negligent." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). "To obtain the benefit of the 3-year exception," Dr. Metzinger must prove that the government "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *Id.* at 135, 133. "All of the facts and circumstances surrounding the violation are taken into account in determining whether a violation was willful." 5 C.F.R. § 551.104. Dr. Metzinger "bears the burden of proving the willfulness of the employer's [Fair Labor Standards Act] violations." *Adams v. United States*, 350 F.3d 1216, 1229 (Fed. Cir. 2003).

On a motion to dismiss for failure to state a claim under this court's rule 12(b)(6), the court must accept well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002). The court is not required to accept the parties' legal conclusions as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). "A complaint must be dismissed under Rule 12(b)(6) when the facts asserted do not give rise to a legal remedy, or do not elevate a claim for relief to the realm of plausibility." *Laguna Hermosa Corp. v. United States*, 671 F.3d 1284, 1288 (Fed. Cir. 2012) (citations omitted).

In an Equal Pay Act case, the plaintiff must establish a prima facie case of pay discrimination by showing that her employer pays workers of one sex more than workers of another sex for equal work. *Corning Glass Works*, 417 U.S. at 196; *Moore v. United States*, 66 F.4th 991, 997 (Fed. Cir. 2023). The burden then shifts to the employer to show that the pay differential is justified under one of four statutory exceptions: seniority, merit, production quality or quantity, or a factor other than sex. *Corning Glass Works*, 417 U.S. at 196-97.

**A.    The court lacks jurisdiction over Dr. Metzinger's Equal Pay Act claims arising from paychecks issued before May 21, 2016**

The government moves to dismiss Dr. Metzinger's claims arising from alleged violations that occurred before May 21, 2017—two years before she filed her wage-discrimination claim in district court. ECF No. 106 at 7-9. The government argues that claims predating May 21, 2017, are untimely under the Equal Pay Act's statute of limitations, 29 U.S.C. § 255(a), and that Dr. Metzinger cannot recover damages for allegedly discriminatory paychecks issued before that two-year window. *Id.*

Dr. Metzinger responds that her complaint is timely and that she may recover damages back to her first unequal paycheck, in 2008, because the statute of limitations is not separately a limitation on damages. ECF No. 108 at 34-40; *see* ECF No. 115 at 1-8. She also disagrees with the government about when her cause of action accrued, starting the statute-of-limitations clock. ECF No. 108 at 3, 21-24. She further argues that, even if the statute of limitations is a limitation on damages, the date she filed the EEOC complaint, not the date she filed the Louisiana district court action, is the relevant filing date to stop the statute-of-limitations clock. *Id.* at 16-26. Therefore, she argues, this court at least has jurisdiction over all claims after June 2014—three years before her June 2017 EEOC complaint. ECF No. 99 at 19 [¶33]. And regardless of the relevant filing date, Dr. Metzinger asserts that she is entitled to section 255(a)'s three-year limitations period—rather than the two-year default limitations period—because the government willfully paid her less than her male colleagues and supervisees. ECF No. 108 at 27-34.

The Equal Pay Act includes both a statute of limitations, 29 U.S.C. § 255(a), and a damages provision, 29 U.S.C. § 216(b). The statute of limitations addresses when a pay discrimination action "may be commenced." 29 U.S.C. § 255(a). The damages provision states that "[a]ny employer who violates the provisions of [the Equal Pay Act] … shall be liable to the employee or employees

affected in the amount of their unpaid minimum wages … and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Thus, the damages provision does not include a time limit. Courts have routinely merged the timeliness inquiry with the question of damages, as discussed below, holding that damages are unavailable for any paycheck issued before the action could be commenced. The parties' briefs in this case merge those concepts as well. This opinion will address each separately.

### 1. Timeliness

The parties agree that each discriminatory paycheck Dr. Metzinger received constitutes a discrete wrong under the Equal Pay Act for purposes of when a cause of action accrues under the statute of limitations. ECF No. 106 at 7-9; *see* ECF No. 108 at 21-25; *see also id.* at 34-40. But the parties' theories differ. The government believes that a cause of action for each paycheck accrues when that paycheck is issued. ECF No. 106 at 7-9. Thus, the government argues that this court lacks jurisdiction over any of Dr. Metzinger's paychecks issued more than two (or three, if the violation was willful) years before she filed her lawsuit. *Id.* (citing *Lange v. United States*, 79 Fed. Cl. 628, 630 (2007) and *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002)); ECF No. 110 at 1-8, 12 (also citing *Santiago v. United States*, 107 Fed. Cl. 154, 156, 158-60 (2012) and *Weber v. United States*, 71 Fed. Cl. 717, 718, 726 (2006)).

Dr. Metzinger argues that her Equal Pay Act cause of action did not accrue until January 2018, the date her paycheck finally complied with the Equal Pay Act, starting the clock on the statute of limitations. ECF No. 108 at 24. Because she filed her district court case less than two (or three) years later, she argues that her complaint is timely. *See id.* at 3-4, 10, 24, 35-36, 40.

The government is correct that an Equal Pay Act claim accrues each time a discriminatory paycheck is issued and that each discriminatory paycheck is considered a discrete act rather than

an incident of a continuing violation. Thus, every time an employer issues an unequal paycheck, a complainant has two or three years from that date to file an Equal Pay Act claim for that paycheck.

As an initial matter, for Equal Pay Act claims, the relevant date is the date the violation occurred, not the date the complainant discovered it. *Jordan v. United States*, 122 Fed. Cl. 230, 239 (2015) (citing *Santiago*, 107 Fed. Cl. at 159; *Lange*, 79 Fed. Cl. at 631; *Weber*, 71 Fed. Cl. at 725); *Weidenbach v. Casper-Natrona County Health Department*, 563 F. Supp. 3d 1170, 1178-79 (D. Wyo. 2021); 45C Am. Jur. 2d Job Discrimination § 1891.

Each discriminatory paycheck is a discrete violation. In *Morgan*, the Supreme Court stated that, in Title VII cases, "each week's paycheck that delivered less to a black [person] than to a similarly situated white [person] is a wrong actionable under Title VII." 536 U.S. at 112 (marks omitted). The Supreme Court then explained that "discrete discriminatory acts" like individual weekly paychecks (*id.* at 112) "are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Id.* at 113.

The Federal Circuit has applied that concept to pay cases generally, adopting the Court of Claims's view that where "payments are to be made periodically, each successive failure to make proper payment gives rise to a new claim upon which suit can be brought." *Brown Park Estates-Fairfield Development Co. v. United States*, 127 F.3d 1449, 1456 (Fed. Cir. 1997) (quoting *Friedman v. United States*, 159 Ct. Cl. 1, 8 (1962)). Other circuits and this court have applied the same analysis to Equal Pay Act cases. *E.g.*, *O'Donnell v. Vencor Inc.*, 466 F.3d 1104, 1113 (9th Cir. 2006); *Pollis v. New School for Social Research*, 132 F.3d 115, 119 (2d Cir. 1997); *Gandy v. Sullivan County*, 24 F.3d 861, 864 (6th Cir. 1994); *Nealon v. Stone*, 958 F.2d 584, 591 (4th Cir. 1992); *Mitchell v. Jefferson County Board of Education*, 936 F.2d 539, 548 (11th Cir. 1991); *Hodgson v. Behrens Drug Co.*, 475 F.2d 1041, 1050 (5th Cir. 1973); *Jordan*, 122 Fed. Cl. at 239;

*Weber*, 71 Fed. Cl. at 723-24; *see also Ledbetter v. Goodyear Tire & Rubber Co., Inc.*, 550 U.S. 618, 640 (2007), *overruled by* Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2, Jan. 29, 2009, 123 Stat. 5 (acknowledging that "the lower courts routinely hear [Equal Pay Act] claims challenging pay disparities that first arose outside the limitations period" because it is well established that under section 255(a) the statute of limitations runs anew for each paycheck).

Thus, an Equal Pay Act claim is timely "as long as at least one forbidden discriminatory act occurs within the relevant limitations period." 45C Am. Jur. 2d Job Discrimination § 1891. Claims may also "be brought for any or all [unequal paychecks] occurring within the limitations period immediately prior to the commencement of the action," but claims arising from discriminatory paychecks issued more than two or three years back from the filing date are time-barred. *Id.*; 29 U.S.C. § 255(a).

Dr. Metzinger argues that an Equal Pay Act violation, like a hostile work environment, represents a continuing violation. ECF No. 108 at 10, 34-40; ECF No. 115 at 2-6. Under the continuing-violation doctrine as applied to a hostile-work-environment claim, a plaintiff may recover damages all the way back to the first instance of unequal treatment. *See Morgan*, 536 U.S. at 117-19. Dr. Metzinger is correct that, before *Morgan*, courts often categorized Equal Pay Act claims as "continuing violations." *Nealon*, 958 F.2d at 592 ("This continuing violation principle that applies … [to] discrimination violations of Title VII applies also to sex discrimination allegations under the Equal Pay Act."); *Pollis*, 132 F.3d at 119; *Gandy*, 24 F.3d at 864; *Miller v. Beneficial Management Corp.*, 977 F.2d 834, 844 (3d Cir. 1992); *Hodgson*, 475 F.2d at 1050. But in *Morgan*, the Supreme Court clarified that serial violations (536 U.S. at 114), including repeated unequal paychecks (*id.* at 112), are different from hostile-work-environment claims that "are based on the cumulative effect of individual acts" and can support recovery even for acts that occurred outside

the limitations period (*id.* at 115-18); *accord O'Donnell*, 466 F.3d at 1113 (Ninth Circuit explaining, post-*Morgan*, that "although the [Equal Pay Act] violations may have been continuing, the continuing violation doctrine does not permit [an employee] to recover back pay for discriminatory pay periods outside the applicable statute of limitations period"). As the Third Circuit explained, *Morgan's* distinction between "continuing violations and discrete acts is not an artifact of Title VII, but is rather a generic feature of federal employment law." *O'Connor v. City of Newark*, 440 F.3d 125, 128 (3d Cir. 2006) (marks omitted).

The timeliness of an Equal Pay Act claim is therefore measured not from the date of Dr. Metzinger's first compliant paycheck, but from the date of her most recent unequal paycheck, which she alleges was issued not long before January 2018. *See* ECF No. 108 at 3, 24. No one disputes that her complaint covering that most recent paycheck is timely. Although Dr. Metzinger alleges that she has received unequal paychecks since she was hired in 2008, each paycheck constitutes its own Equal Pay Act violation, accruing on the date it was issued. Each time the government issued an unequal paycheck, Dr. Metzinger had two (or three) years to file a claim.

The date Dr. Metzinger filed her complaint in district court, rather than her EEOC filing date, is the relevant filing date under the Equal Pay Act's statute of limitations. *Weber*, 71 Fed. Cl. at 724 n.11; *Hickman v. United States*, 10 Cl. Ct. 550, 552-53 (1986) (collecting cases and explaining that "the mere filing of an administrative claim does not toll the statute of limitations imposed by section 255(a)"); 26 Am. Jur. Proof of Facts 3d 269 § 5 (2024 update) ("The limitation period for bringing an Equal Pay Act lawsuit is *not* tolled by the filing or pendency of an administrative charge with a … federal agency"); *see also* 29 C.F.R. § 1614.408 ("The filing of a complaint or appeal [at the EEOC] shall not toll the time for filing a civil action."); *Jordan*, 122 Fed. Cl. at 240. That is because "filing an administrative claim is not a mandatory prerequisite to judicial relief"

under the Equal Pay Act. *Hickman*, 10 Cl. Ct. at 553. Dr. Metzinger did not have to exhaust her administrative remedies before suing in federal court. 29 C.F.R. § 1614.408; *Washington County v. Gunther*, 452 U.S. 161, 175 n.14 (1981). The EEOC and courts have independent, concurrent jurisdiction over Equal Pay Act claims. *Hickman*, 10 C. Ct. at 553; 29 U.S.C. § 216(b).

And nothing in the Equal Pay Act deprives one venue of jurisdiction when the other venue is chosen. Dr. Metzinger was "not prevented from pursuing a judicial remedy prior to, or concurrently with, administrative relief." *Hickman*, 10 Cl. Ct. at 553. The Supreme Court has held that the filing of administrative proceedings, when the agency and court have concurrent jurisdiction, does not affect whether a claim is timely in district court. *Unexcelled Chemical Corp. v. United States*, 345 U.S. 59, 65-66 (1953); *see also Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 460-61, 465-66 (1975) (holding that where Congress gave the complainant the choice of two independent remedial procedures, the choice of one procedure did not toll the statute of limitations for the other, and there was "no policy reason that excuse[d] [the complainant's] failure to take the minimal steps necessary to preserve each claim independently").

The concurrent jurisdiction of the EEOC and district court indicates that the EEOC judge was likely mistaken in believing that the commission lacked jurisdiction over Dr. Metzinger's then-pending Equal Pay Act claim once she filed in district court. The EEOC judge, in dismissing Dr. Metzinger's case, relied on a regulation that governs appeals of EEOC decisions, not administrative trials, like Dr. Metzinger's. ECF No. 117-1 at 31, 33 (citing 29 C.F.R. § 1614.409); *see* 29 C.F.R. § 1614.409 ("Filing a civil action … shall terminate Commission processing *of the appeal*." (emphasis added)). And, regardless of the regulation, the statutory structure requires the EEOC to hear Equal Pay Act claims concurrently with courts. 29 U.S.C. § 216(b); *Hickman*, 10 Cl. Ct. at 553. Dr. Metzinger is also correct that Title VII requires a plaintiff to exhaust

administrative remedies, and Title VII and Equal Pay Act claims often overlap, so plaintiffs are encouraged to file at the EEOC first. *See* 29 C.F.R. § 1614.202 (explaining that Equal Pay Act claims will be investigated and heard by the EEOC). It appears that Dr. Metzinger's administrative claim should not have been dismissed and that she should have been able to recover administratively for earlier violations, under the statute of limitations governing that earlier-filed proceeding. That premature dismissal can be raised at the EEOC.

The EEOC's premature dismissal does not, however, change the date this suit was filed. And Dr. Metzinger does not seek equitable tolling for the paychecks that are outside the limitations window. *See* ECF No. 108 at 25-26.

Finally, the parties agree that the date of filing is not the date the case was transferred to this court. That is, the government does not dispute that Dr. Metzinger gets the benefit of the filing date in the Louisiana district court, even though she does not get the benefit of the date she filed her EEOC complaint. ECF No. 106 at 7; *see* 28 U.S.C. § 1631; *Henke v. United States*, 60 F.3d 795, 800 (Fed. Cir. 1995).[4]

Dr. Metzinger filed her complaint in the Louisiana district court on May 21, 2019. Thus, Dr. Metzinger has raised a timely Equal Pay Act claim arising from her most recent unequal paycheck and from every other allegedly unequal paycheck issued two or three years before May 21, 2019. (Whether it is two or three years is addressed next.)

---

[4] Under 28 U.S.C. § 1500, a plaintiff may not file suit in this court if she has pending a suit against the United States for the same damages in another court, creating a trap for unwary claimants who have both Title VII and Equal Pay Act claims. Dr. Metzinger has pending a suit in district court seeking damages under Title VII. But as the Federal Circuit noted, § 1500 does not divest this court of jurisdiction in this case because Dr. Metzinger filed her Equal Pay Act suit in district court before she filed her Title VII suit. *Metzinger*, 20 F.4th at 786 n.8.

## 2.    Willfulness

Dr. Metzinger alleges that she is entitled to the three-year limitations period under section 255(a), plus liquidated damages, because the VA willfully violated the Equal Pay Act. ECF No. 99 at 12 [¶19], 30 [¶53(3)], 32-33 [¶56]. Dr. Metzinger argues that to survive this motion to dismiss, she need only plausibly allege the government's willfulness; she need not prove it. ECF No. 108 at 4, 27, 30-32. She argues that she can satisfy that burden by making general allegations of willfulness and supporting them with circumstantial evidence. *Id.* at 4, 27 (citing RCFC 9(b), which permits "intent, knowledge, and other conditions of a person's mind [to] be alleged generally").

The government argues that Dr. Metzinger needs more evidence of willfulness to satisfy the court's pleading standards. ECF No. 106 at 7-9 (citing *Santiago*, 107 Fed. Cl. at 158-60); ECF No. 110 at 10-12. The government adds that additional post-complaint facts do not help Dr. Metzinger because she has not moved to amend her complaint, and regardless, any amendment would be futile. ECF No. 110 at 12.

To qualify for the three-year statute of limitations, at the motion-to-dismiss stage, Dr. Metzinger must "plead facts that make entitlement to the willfulness exception plausible." *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 323 (2d Cir. 2021); *see Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1299-300 (10th Cir. 2018); *Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 903 (9th Cir. 2013) (relying on rule 9(b) to distinguish the standard for evaluating willfulness on a motion to dismiss and the standard on a motion for summary judgment). While "the mere allegation of willfulness is insufficient" (*Whiteside*, 995 F.3d at 323), Dr. Metzinger need only allege facts that nudge her claims "across the line from conceivable to plausible" (*Twombly*, 550 U.S. at 570). "At the pleading stage," Dr. Metzinger "need not allege willfulness [under the Fair Labor Standards Act] with specificity." *Rivera*, 735 F.3d at 903. Circumstantial evidence can be

sufficient to establish "a plausible inference of willfulness at the pleadings stage." *Whiteside*, 995 F.3d at 325 n.9.

For example, in *Weber*, this court declined to dismiss a claim that fell within the three-year limitations period, without resolving whether the government's conduct was in fact willful. 71 Fed. Cl. at 724 & n.12, 726. The court permitted Ms. Weber's claim to proceed and allowed the government to "reserve[] its right to seek to dismiss any portion of Ms. Weber's claims that may be barred by the [Equal Pay Act's] two-year statute of limitations should she fail in her ultimate burden to prove that the [government] acted willfully." *Id.* at 724 n.12. Similarly, in another case, the court heard "testimony at trial on the period three years prior to the date of [the] plaintiff's complaint" but "recogniz[ed] that evidence relating to the period more than two years prior to [the] plaintiff's complaint would be relevant only if the court found a willful violation of the [Equal Pay] Act." *Jenkins v. United States*, 46 Fed. Cl. 561, 562 n.2 (2000) (marks omitted); *see also Ewer v. United States*, 63 Fed. Cl. 396, 402 (2005) (holding that an employee's complaint plausibly alleged that the government acted willfully and waiting for trial to decide which actions were willful).

As long as Dr. Metzinger plausibly alleges willful government conduct, she need not actually prove willfulness until the damages stage of the case. At that stage, she will have to show that the government acted willfully: knowingly or with reckless disregard for the truth. *See McLaughlin*, 486 U.S. at 133.

Dr. Metzinger's transfer complaint plausibly alleges that the government willfully violated the Equal Pay Act between 2016 and 2019. Dr. Metzinger's complaint offers more than mere allegations and conclusory statements. Dr. Metzinger alleges that although she was consistently rated as "exceptional" from 2008 through 2017, she never got a market pay panel evaluation and

therefore never received any "increases for merit or market pay" within that period. ECF No. 99 at 17 [¶30]. According to Dr. Metzinger, under agency regulations she should have been reviewed at five market pay panels over the course of those nine years. *Id.* She alleges that a market pay panel convened for her only in September 2017, after she initiated complaints about the VA's hostile work environment and wage discrimination practices. *Id.* at 18 [¶31]. According to Dr. Metzinger, even though the panel determined that she was entitled to a salary increase and back pay, her paychecks only began to reflect that increase four months later, in January 2018, after the VA knew it had underpaid her. *Id.* at 18-19 [¶¶31-32]. Dr. Metzinger further alleges that she still has not received the back pay she was owed from June 16, 2016, to June 26, 2017, after the VA knew of the discrepancy. *Id.* at 19 [¶33].

Dr. Metzinger also alleges willfulness in her male supervisees being given retention bonuses in violation of the rules. According to Dr. Metzinger, Dr. Diamond improperly received bonuses from 2009 to 2012,  without any evidence that he had "superior qualifications" or "documentation showing that he was earning, in the private sector[,] more money than he was being offered" by the VA. ECF No. 99 at 20 [¶35]; *see* ECF No. 108 at 11, 13-14. Dr. Metzinger adds that the VA knowingly violated protocols by awarding him retention bonuses without first informing and consulting with Dr. Metzinger, his supervisor. ECF No. 99 at 21 [¶36].

Dr. Metzinger further alleges that when the government responded to discovery requests for salary information during the EEOC process, human resources "did not provide accurate information respecting the other all Tier [I] physicians who she supervised. Instead the numbers provided were far lower than the actual wages they were receiving." ECF No. 99 at 20 [¶34]; *see* ECF No. 117 at 17-22 (arguing that the VA's salary spreadsheet underreported others' take-home pay, as it did not match their other pay documents).

Those allegations, if true, would show that the government knowingly or with reckless disregard chose to underpay Dr. Metzinger. The government attempts to analogize Dr. Metzinger's allegations to the unsubstantiated and conclusory allegations of willfulness that this court found insufficient to overcome a motion to dismiss in *Santiago*, 107 Fed. Cl. at 160-61. ECF No. 106 at 8. But in *Santiago*, the plaintiff alleged only that his employer did not respond to his complaints and that his EEOC supervisor promised "to do something about" his unequal pay concerns but never did. 107 Fed. Cl. at 160-61. Dr. Metzinger, in contrast, alleges that the government underreported her comparators' salaries and prevented her from sitting on the pay panels of her subordinates, and that the VA retaliated against her when she made complaints, all to hide the pay disparity. ECF No. 99 at 20 [¶34], 26-30 [¶¶48-52].

Any additional evidence included in Dr. Metzinger's briefs, including reports on pay discrimination in the medical field generally (ECF No. 108 at 33-34, 41-46), is not necessary for her to succeed. And because she plausibly alleges that the government willfully violated the Equal Pay Act before the two-year limitations window, the court need not decide whether evidence of willful conduct that occurred within the two-year period is sufficient to entitle a plaintiff to the benefit of the third year.

Because Dr. Metzinger has satisfied the pleading requirements, the court will not dismiss Dr. Metzinger's claims between two and three years before she filed the district court action.

### 3.    Damages

The parties also dispute whether the timely filing of a suit entitles Dr. Metzinger to damages dating back to her initial employment or limits her recovery to back pay and damages arising from paychecks issued within the two- or three-year period under the statute of limitations. The government argues that Dr. Metzinger is barred from recovering for alleged violations that occurred outside the limitations period. ECF No. 106 at 7-9; ECF No. 110 at 1-8, 12.

Dr. Metzinger disagrees and argues that section 255(a) is only a limitation on filing—not a limitation on damages—and that it does not limit how far back she can collect back pay and damages. ECF No. 108 at 5-6, 34-40. She argues that the VA's history of issuing unequal paychecks constitutes a "continuing violation" analogous to a hostile workplace claim, composed of "multiple, related discriminatory acts." *Id.* at 35, *see also id.* at 34-40. Under her continuing-violation theory, Dr. Metzinger argues that as long as one discriminatory paycheck is issued within the limitations period, "all of them are actionable" going back to her first unequal paycheck. *Id.* at 35, 40.

As noted above, the damages provision of the Equal Pay Act does not impose a time limit on damages. 29 U.S.C. § 216(b). But many circuits, and this court, have read section 255(a) as a limitation on both filing and damages. *See, e.g.*, *Pollis*, 132 F.3d at 118-19; *Ashley v. Boyle's Famous Corned Beef Co.*, 66 F.3d 164, 168 (8th Cir. 1995) ("Relief back to the beginning of the limitations period strikes a reasonable balance between permitting redress of an ongoing wrong and imposing liability for conduct long past."); *Gandy*, 24 F.3d at 863; *Nealon*, 958 F.2d at 591 n.5; *EEOC v. McCarthy*, 768 F.2d 1, 3 n.4 (1st Cir. 1985); *Weber*, 71 Fed. Cl. at 724 & n.12; *see also Vereen v. Woodland Hills School District*, No. 06-cv-462, 2008 WL 794451, at *23 (W.D. Pa. Mar. 24, 2008) (explaining that the "timeliness of an Equal Pay Act claim must be measured from the date of the plaintiff's last paycheck" and a "plaintiff's recovery under the Equal Pay Act is limited to damages resulting from unequal pay within the applicable limitations period"); *cf. Miller*, 977 F.2d at 843-44 (addressing only timeliness of filing and not damages). An EEOC regulation discussing the availability of lawsuits likewise states that "[r]ecovery of back wages is limited to two years prior to the date of filing suit, or to three years if the violation is deemed willful; liquidated damages in an equal amount may also be awarded." 29 C.F.R. § 1614.408. And,

as discussed above, the continuing violation theory does not permit an employee to recover for Equal Pay Act violations outside the limitations period. Thus, although damages would only be calculated at a later stage of litigation, precedent establishes that section 255(a) is both a limitation on filing and a limitation on damages.[5]

*      *      *

In sum, this court lacks jurisdiction over Dr. Metzinger's Equal Pay Act claims arising from paychecks issued before May 21, 2016. If Dr. Metzinger can prove willfulness, the court has jurisdiction over claims arising from paychecks on that day and after.

### B.    Dr. Metzinger has established a prima facie case of pay discrimination

The government argues that Dr. Metzinger's timely wage-discrimination claims must nonetheless be dismissed for failure to state a claim because her transfer complaint does not allege that she was paid less than comparators during the time period over which this court has jurisdiction. ECF No. 106 at 10-11. The government argues that all evidence of the comparators' pay comes from outside the limitations period and that two comparators were paid less than Dr. Metzinger. *Id.*

Although Dr. Metzinger does not directly respond to those arguments, her transfer complaint establishes a prima facie case of discrimination under the Equal Pay Act. Dr. Metzinger may use evidence from outside the jurisdictional period to establish a prima facie case. "Statutes of limitations do not operate as an evidentiary bar …. In the context of the Equal Pay Act, the statute of limitations does not dictate which co-workers the plaintiff may submit as comparators."

---

[5] While the courts have uniformly read section 255(a) as both a statute of limitations and a limitation on damages, that interpretation does not necessarily follow from the statute's plain language, which provides that a cause of action "may be commenced within two [or three] years after the cause of action accrued." 29 U.S.C. § 255(a). Meanwhile, the damages provision, section 216, does not include a time limit on damages. *See generally Warner Chappell Music, Inc. v. Nealy*, 601 U.S. 366, 372 (2024) (distinguishing statutes of limitations from limitations on damages).

*Brinkley-Obu v. Hughes Training, Inc.*, 36 F.3d 336, 346 (4th Cir. 1994); *see generally* Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2, Jan. 29, 2009, 123 Stat. 5 § 2(3) ("With regard to any charge of discrimination under any law, nothing in this Act is intended to preclude or limit an aggrieved person's right to introduce evidence of an unlawful employment practice that has occurred outside the time for filing a charge of discrimination.").

In *Corning Glass Works*, the Supreme Court relied on evidence of wage discrimination that occurred before the limitations window to determine that the plaintiffs had met their initial burden of showing differential pay. 417 U.S. at 192 n.6, 195, 205; *see also Gunther*, 452 U.S. at 201 (Rehnquist, J., dissenting) ("Under the Equal Pay Act, it is not necessary that every Equal Pay Act violation be established through proof that members of the opposite sex are *currently* performing equal work for greater pay."); 29 C.F.R. § 1620.13(b)(5) ("[I]t is no defense that the unequal payments began prior to the statutory period.").

Since then, at least one other circuit court has "consider[ed] relevant evidence from before [the Equal Pay Act's limitations period] while assessing the worker's claims." *Price v. Northern States Power Co.*, 664 F.3d 1186, 1191 (8th Cir. 2011); *see also, e.g., Dindinger v. Allsteel, Inc.*, 853 F.3d 414, 425 (8th Cir. 2017) (accepting testimony as relevant to establishing an Equal Pay Act violation even though the testifying employee left her job before the limitations period began); *Bartelt v. Berlitz School of Languages of America, Inc.*, 698 F.2d 1003, 1004-05 n.1 (9th Cir. 1983), *cert. denied*, 464 U.S. 915 (1983) (noting that "under the Equal Pay Act plaintiffs need not rely solely on a discriminatory wage differential between *current* employees to establish a violation, but may make comparisons to prior employees" even if their employment ended before the limitations period). Dr. Metzinger therefore may use pay information from comparators even if that pay information is from outside the limitations period.

Dr. Metzinger's complaint compares her pay to that of four male comparators. *See* ECF No. 99 at 20-24 [¶¶35-44]. In addition to raising the statute of limitations, the government also argues that the salaries of two of the comparators, Dr. Vincent and Dr. Carriere, cannot support a discrimination claim because they were paid less than Dr. Metzinger. ECF No. 106 at 10-11. But, under the Equal Pay Act, comparators can include employees with similar pay who hold fewer duties or responsibilities. *Brinkley-Obu*, 36 F.3d at 342 & n.12; *Hein v. Oregon College of Education*, 718 F.2d 910, 917 (9th Cir. 1983); *see* 29 C.F.R. § 1620.14(b). Dr. Vincent and Dr. Carriere, like Dr. Metzinger, are physicians, but Dr. Metzinger alleges that she had significantly more administrative responsibilities and duties than either of them. Those types of comparators are relevant especially in a case like Dr. Metzinger's, where she is the only chief with additional duties. *See Brinkley-Obu*, 36 F.3d at 342 n.12. There is no other comparator with the same duties. Dr. Metzinger alleges that she was paid only marginally more than those male doctors, between $1,000 and $3,000 annually. ECF No. 99 at 23 [¶¶41-42]. That is sufficient to state a claim under rule 12(b)(6).

In a footnote, the government also argues that Dr. Metzinger's wage-discrimination claim should be dismissed for failure to state a claim because she alleges that her salary was eventually corrected in January 2018, when she became the highest paid employee in the section. ECF No. 106 at 9 n.5. But that correction does not address the alleged underpayments she received between May 2016 and January 2018. And even the government concedes that Dr. Metzinger's claims after May 2017 are timely. ECF No. 110 at 13.

Thus, the government has not established that Dr. Metzinger's complaint should be dismissed for failure to state a claim.

## C.    This court does not have jurisdiction over Dr. Metzinger's retaliation claim

The government argues that Dr. Metzinger's retaliation claim must be dismissed because retaliation is a tort, and this court lacks jurisdiction over tort claims. ECF No. 106 at 11-12 (citing

*Jentoft*, 450 F.3d at 1349). Dr. Metzinger argues that this court must be able to adjudicate her retaliation claim because "the parties were given no choice but to litigate in the Court of Federal Claims." ECF No. 108 at 46. She argues that "[i]t would hardly make sense to require the federal government to abide by the Equal Pay Act, and require victims to bring their lawsuit only *in this court*," and then prevent the court from adjudicating retaliation claims that arise from the same Equal Pay Act violation. *Id.* at 48.

The government is correct that this court lacks jurisdiction over Dr. Metzinger's retaliation claim under the Fair Labor Standards Act. In *Jentoft*, the Federal Circuit held that a claim based on an employer's retaliation in response to complaints of sex-based wage discrimination, like Dr. Metzinger's, is a tort claim. 450 F.3d at 1349-50. Tort claims are beyond this court's jurisdiction. *Id.*; 28 U.S.C. § 1491(a)(1) (expressly excluding cases "sounding in tort" from this court's jurisdiction). And Dr. Metzinger does not allege that her retaliation claim falls within an established exception to that rule. *E.g.*, *Awad v. United States*, 301 F.3d 1367, 1372 (Fed. Cir. 2002) (explaining that this court can hear tort claims when they stem from a breach of contract claim).

But if this court lacks jurisdiction, and "it is in the interest of justice," the court should transfer a civil action to the court "in which the action or appeal could have been brought at the time it was filed or noticed." 28 U.S.C. § 1631. In a similar case, this court transferred a wage-discrimination retaliation claim to the appropriate federal district court after determining that it lacked jurisdiction. *Kennelly v. United States*, No. 23-425, 2023 WL 3667432, at *1 (Fed. Cl. May 25, 2023) (determining that transferring a retaliation claim to district court "would best serve the interests of justice because it would avoid jurisdictional disputes" (marks omitted)). Here, Dr. Metzinger's case originated in the Eastern District of Louisiana, and her Title VII case there is still pending, stayed. *Metzinger v. Department of Veterans Affairs*, No. 20-cv-599, ECF No. 10 (E.D.

La. Nov. 10, 2020). She could have brought a retaliation claim in that court, at the time she brought suit there under the Equal Pay Act. Transferring the claim back to the Eastern District of Louisiana would best serve the interests of justice.

Dr. Metzinger is correct that keeping the Equal Pay Act claim in this court while transferring the retaliation claim is not efficient. Where the Equal Pay Act and Tucker Act intersect, Congress has—likely unintentionally—created a disjointed remedial scheme for federal employees alleging pay discrimination. But this court cannot avoid that outcome.

### D.    Dr. Metzinger's motion to direct negotiation does not warrant relief

After the July 2024 oral argument on the government's motion to dismiss, the court ordered the parties to engage in settlement discussions every thirty days and report on each of those discussions. ECF No. 116. Complying with that order, the parties filed two joint status reports. ECF Nos. 117, 120. Instead of filing a third joint status report, Dr. Metzinger filed a motion asking the court to direct the government to negotiate in good faith, or in the alternative, to relieve the parties of their obligation to participate in settlement negotiations. ECF No. 121. She argues that no actual negotiations have taken place because the government is not willing to address all of Dr. Metzinger's related claims—the Equal Pay Act claim, the Title VII claim, and the retaliation claim—holistically, as encouraged by the court, and because the government's attorney—Patrick Angulo—does not have settlement authority. ECF No. 121-1 at 4-11.

The government opposes in part, arguing that the government is engaging in good-faith settlement efforts and remains open to settlement. ECF No. 122. Mr. Angulo states that he is coordinating with the VA, counsel from the Eastern District of Louisiana, and the Defense Finance and Accounting Service. *Id.* at 2-3, 7. The government also argues that Dr. Metzinger's motion does not comply with this court's rule 7.3, which requires that, before filing a non-dispositive

motion, a party must "make a reasonable and good faith effort to discuss the anticipated motion with opposing counsel." *Id.* at 6.

Dr. Metzinger's motion does not warrant relief. The Department of Justice has broad authority to settle all of Dr. Metzinger's claims, and Mr. Angulo has authority to participate in negotiation discussions. ECF No. 122 at 9. Mr. Angulo did not refuse to address Dr. Metzinger's Title VII and retaliation claims; he proposed addressing the Equal Pay Act claims first. ECF No. 121-1 at 5. Furthermore, although Dr. Metzinger asserts that she satisfied the requirements of rule 7.3 because she communicated her objections to the government before filing her motion (ECF No. 123), she did not inform the government that she planned to file a motion (*id.*; ECF No. 123-1). Thus, she failed to comply with rule 7.3. *See Lohmann v. United States*, 171 Fed. Cl. 177, 182 n.5 (2024).

The parties shall continue to negotiate and work together to try to settle all of Dr. Metzinger's claims holistically and in light of this opinion. The parties shall meet at least once every thirty days and shall file a joint status report after each of those discussions updating the court on the status of the settlement process. The next joint status report is due November 12, 2024. The court also plans to hold a status conference and will schedule that shortly.

## III.    Conclusion

For the reasons stated above, this court **grants in part and denies in part** the government's motion to dismiss Dr. Metzinger's transfer complaint (ECF No. 106). The Clerk of the Court is **directed to transfer** Dr. Metzinger's retaliation claim to the United States District Court for the Eastern District of Louisiana as a related case to case nos. 19-cv-10614 and 20-cv-599. The court also **denies** Dr. Metzinger's motion to direct the government to negotiate in good faith, or in the

alternative, to relieve the parties of their obligation to participate in settlement negotiations (ECF No. 121).

**IT IS SO ORDERED.**

 s/ Molly R. Silfen
MOLLY R. SILFEN
Judge